MATTER OF OSEGUERA

In Visa Petition Proceedings

A-11807537

*Decided by Board May 15, 1980*

(1) Before approval of a visa petition can be denied pursuant to section 204(c) of the
Immigration and Nationality Act, 8 U.S.C. 1154(c), it must be established that a
fraudulent marriage was entered into and that the beneficiary was previously issued a
visa as a nonquota or preference immigrant on the basis of that marriage.

(2) The bar in section 204(c) is inapplicable where the beneficiary of a visa petition
previously entered into a fraudulent marriage for the purpose of obtaining immigra-
tion benefits but was accorded nonquota status as a native of a Western Hemisphere
country rather than as the spouse of a lawful permanent resident.

ON BEHALF OF PETITIONER:     Timothy S. Barker, Esquire
                            Legal Aid Society of San Diego, Inc.
                            429 Third Avenue
                            Chula Vista, California   92010

BY:  Milhollan, Chairman; Maniatis, Appleman, Maguire, and Farb, Board Members

The United States citizen petitioner filed a visa petition on behalf of
the beneficiary to accord her immediate relative status as his mother
under section 201(b) of the Immigration and Nationality Act, 8 U.S.C.
1151(b). In a decision dated September 11, 1978, the District Director
denied the petition. The petitioner has appealed from that decision.
The appeal will be sustained and the record will be remanded to the
District Director.

The petitioner is a 24-year-old native of Mexico and naturalized
citizen of the United States. The beneficiary is a 47-year-old native and
citizen of Mexico.

The record reflects that the beneficiary entered the United States as
an immigrant on January 7, 1960, with a visa indicating that she was
classified as an O-1 nonquota immigrant.[1] Subsequent to her entry, the

---

[1] According to the regulations in effect at the time the beneficiary's visa was issued, an
O-1 classification represented that an alien was a nonquota immigrant by virtue of
qualification as a native of certain Western Hemisphere countries, including Mexico,
under section 101(a)(27)(C) of the Act, 8 U.S.C. 1101(a)(27)(C). *See* 22 C.F.R. 42.3 (1958).

beneficiary admitted to immigration officials that, on the advice of a notary public, she had entered into a sham marriage with a person whom she believed to be Francisco Calderon-Ramirez, a lawful permanent resident of the United States, in order to facilitate her acquisition of permanent resident status.[2]

The District Director denied the petition on the ground that the beneficiary was precluded from receiving approval of the visa petition by section 204(c) of the Act, 8 U.S.C. 1154(c), because she was previously accorded a nonquota status by reason of a marriage entered into for the purpose of evading the immigration laws. On appeal, the petitioner argues that the beneficiary obtained a nonquota visa as a native of Mexico rather than as the spouse of a lawful permanent resident of the United States, and that section 204(c) is, therefore, inapplicable in this case.

Section 204(c) provides in pertinent part:

> [N]o petition shall be approved if the alien has previously been accorded a nonquota or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws.

The Board has previously determined that the language of section 204(c) is unrestricted, barring approval not only of new "spouse" petitions but of all subsequent visa petitions, and that its mandatory provisions do not permit the exercise of any discretion. *See Matter of La Grotta*, 14 I&N Dec. 110 (BIA 1972); *Matter of Cabeliza*, 11 I&N Dec. 812 (BIA 1966). However, before approval of a visa petition can be denied pursuant to section 204(c), it must be established that a fraudulent marriage was entered into and that the beneficiary was issued a visa as a nonquota or preference immigrant on the basis of that marriage. *See Amarante v. Rosenberg*, 326 F.2d 58 (9 Cir. 1964); *Matter of Rubino*, 15 I&N Dec. 194 (BIA 1975); *Matter of Pisciotta*, 10 I&N Dec. 685 (BIA 1964); *Matter of F—*, 9 I&N Dec. 684 (BIA 1962).

In the instant case, the record clearly indicates that the beneficiary fraudulently entered into a marriage for the purpose of obtaining immigration benefits.[3] However, it is equally apparent from the O-1

---

[2] The beneficiary, in fact, unwittingly married someone posing as Francisco Calderon-Ramirez, whose immigration documents had been borrowed by the notary public for use, without his knowledge, in obtaining a visa for the beneficiary. The scheme was discovered by the Service when Mr.Calderon-Ramirez reported that he had received visas in the mail for the beneficiary and the petitioner, whom he did not know. Having admitted the fraudulent marriage, the beneficiary was apparently permitted to leave the country voluntarily. We note that the record contains documents relative to her subsequent immigration history which need not be discussed since they are not relevant to the issue on appeal.

[3] Although the beneficiary was entitled to nonquota status as a native of Mexico under

classification on her visa that she was accorded nonquota status as a native of Mexico, not as the spouse of a lawful permanent resident of the United States.[4] Therefore, we conclude that approval of the visa petition filed by her son on her behalf is not precluded by section 204(c). *Cf. Matter of Villagomez*, 15 I&N Dec. 528 (BIA 1975). Accordingly, the appeal will be sustained.

Although we have determined that section 204(c) does not mandate denial of the visa petition, we make no finding as to whether the petitioner has met his burden of proving his claimed relation ship to the beneficiary. *See Matter of Brantigan*, 11 I&N Dec. 493 (BIA 1966). We shall remand the record to the District Director for such a determination.[5]

**ORDER:** The appeal is sustained, and the record is remanded to the District Director for further proceedings consistent with the foregoing opinion and the entry of a new decision.

---

the immigration laws then in effect, her status as the spouse of a lawful permanent resident exempted her from the passport requirements and facilitated processing of her visa application. *See* 8 C.F.R. 211.2(a) (1959); 22 C.F.R. 42.6(a)(1) (1958); 22 C.F.R. 42.20(a) (1958); 22 C.F.R. 42.36(b)(6) (1958).

[4] The law has never provided that an immigrant is exempt from numerical limitations solely by virtue of his marriage to a lawful permanent resident. At the time the beneficiary entered, therefore, she would only have been accorded nonquota status on the basis of her marriage if her spouse had been a United States citizen. *Compare* section 101(a)(27)(A) with section 203(a)(3) of the Act, in effect prior to its amendment on October 3, 1965. Moreover, even if the beneficiary had been married to a United States citizen, the preferred practice in the case of an alien who qualified for nonquota status both as a Western Hemisphere native and as the spouse of a United States citizen was to base classification on the alien's nativity in order to dispense with the necessity of filing a visa petition. *See Gordon and Rosenfield, Immigration Law and Procedure*, section 2.18 (1959). Thus, the status which the beneficiary derived from her birth in Mexico would have taken precedence, in according nonquota classification, over any status obtained by marriage.

[5] he event that the record is returned to the Board as a result of an adverse decision of the District Director, an English translation should accompany any foreign documents included in the record. *See* 8 C.F.R. 103.2(b)(1).