**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

VACHAGAN AKOPYAN; ARMENUHI
SIMONYAN,

      Plaintiffs - Appellants,

v.

WILLIAM P. BARR, United States
Attorney General; KEVIN K.
McALEENAN,* Acting Secretary of
Homeland Security; LEE CISSNA,
Director for United States Citizenship and
Immigration Services (USCIS); KRISTI
BARROWS, District Director for the
Denver District Office of USCIS; UNITED
STATES DEPARTMENT OF
HOMELAND SECURITY; USCIS;
CHRISTOPHER A. WRAY, Director of
the Federal Bureau of Investigation,

      Defendants - Appellees.

No. 19-1009
(D.C. No. 1:17-CV-01724-RBJ)
(D. Colo.)

_____

**ORDER AND JUDGMENT**\*\*

_____

\* In accordance with Rule 43(c)(2) of the Federal Rules of Appellate
Procedure, Kevin K. McAleenan is substituted for Kirstjen M. Nielsen as
Defendant-Appellee in this action.

\*\* After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

_____

Before **HOLMES**, **O'BRIEN**, and **MATHESON**, Circuit Judges.

_____

This case arises out of the denial of an I-130 visa petition—a requirement for an alien relative seeking permanent residence or adjustment of status. Armenuhi Simonyan filed an I-130 petition on behalf of her non-citizen husband, Vachagan Akopyan. The United States Citizenship and Immigration Services (USCIS) denied the petition on the grounds that Akopyan had previously entered into a fraudulent marriage to evade the immigration laws. The Board of Immigration Appeals (BIA) affirmed the decision, and the district court affirmed the BIA after Akopyan and Simonyan (Plaintiffs) sought review under the Administrative Procedure Act (APA). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

Akopyan entered the United States on a non-immigrant J-1 visa in 2007. On February 25, 2008, Akopyan married United States citizen Chelsea Taylor, who filed an I-130 petition on his behalf on June 22, 2008. Several months later, Taylor and Akopyan appeared for an interview with the USCIS in connection with the processing of their petition. But they divorced on November 9, 2011, before the USCIS issued a decision. On December 29, 2011, Akopyan married Simonyan, and less than three months later, she gave birth to their daughter. On December 18, 2012, Simonyan filed an I-130 petition on Akopyan's behalf.

In May 2013, while both I-130 petitions were still pending, the USCIS interviewed Taylor, who stated, *inter alia*: (1) she married Akopyan for the sole purpose of him obtaining legal permanent resident status; (2) she was dating someone else at the time of their first USCIS interview; and (3) Akopyan coached her in preparation for that interview. On December 24, 2013, the USCIS denied Taylor's I-130 petition based on: (1) their intervening divorce, as Akopyan was no longer an immediate relative of Taylor, *see* 8 U.S.C. § 1154(a)(1)(A)(i); and (2) a finding that their marriage was "entered into for the purpose of evading the immigration laws," *id.* § 1154(c). That same day, the USCIS issued a Notice of Intent to Deny (NOID) Simonyan's I-130 petition, citing evidence tending to show Akopyan's marriage to Taylor was fraudulent and allowing Simonyan thirty days to submit any evidence in response. Simonyan then offered documents and photographs to show Akopyan's marriage to Taylor was genuine. On September 25, 2014, the USCIS interviewed Taylor for a second time, and Taylor provided additional details showing her marriage to Akopyan was fraudulent.

On December 8, 2014, the USCIS issued a second NOID to Simonyan, citing Taylor's second interview as well as an investigation by Immigration and Customs Enforcement (ICE) into a marriage fraud scheme orchestrated by Bozhidar Bakalov, which revealed several documents showing Akopyan and Taylor were "customers" of the scheme. Aplt. App. at 9 (internal quotation marks omitted). The USCIS also noted the supplemental documentation Simonyan submitted in response to the first NOID failed to establish Akopyan had lived with Taylor and that USCIS's

3

independent investigation tended to show Taylor had not resided at the Colorado apartment Akopyan claimed to have shared with her.  The USCIS allowed Simonyan another thirty days to provide additional evidence.  But instead of providing additional evidence, Simonyan waited until the end of that deadline and requested a ninety-day extension through counsel.

On February 9, 2015, the USCIS (1) denied the request for an extension as such is not permitted under 8 C.F.R. § 103.2(b)(8)(iv); and (2) denied Simonyan's I-130 petition under 8 U.S.C. § 1154(c) on the grounds that Akopyan's marriage to Taylor was fraudulent.  In denying Simonyan's petition, the USCIS did not rely on the 2013 denial of Taylor's petition and the finding of marriage fraud therein.  Rather, in a thorough decision, the USCIS described and "considered all the evidence on record."  Aplee. Suppl. App. at 19.  Indeed, Plaintiffs acknowledged in district court that the USCIS denied Simonyan's petition not simply "based on a finding of fraud stated in [Taylor's] Petition Decision," but also on "evidence gathered in 2014, as well as an ICE investigation."  Aplt. App. at 16 (internal quotation marks omitted).  In particular, the USCIS gave "[s]ignificant weight" to the evidence uncovered in that ICE investigation, which implicated Akopyan and Taylor in "a well-documented marriage fraud scheme that resulted in identifying over 400 fraudulent marriages, 65 indictments, 58 arrests, and 55 convictions."  Aplee. Suppl. App. at 19.

Simonyan appealed to the BIA, which affirmed the USCIS.  Like the USCIS, the BIA did not rely on the denial of Taylor's petition or the finding of fraud therein, but based its decision "on the record, which includes a paucity of documentation

4

relating to the bona fides of [Akopyan's] former marriage to Ms. Taylor, conflicts in the evidence, and adverse information uncovered during a criminal marriage fraud investigation." *Id.* at 24.

Plaintiffs then brought an action in federal district court under the APA. The district court affirmed the BIA, and Plaintiffs timely appealed.

## DISCUSSION

### I.   Standard of Review

Because this case was brought under the APA, we review the district court's decision de novo. *See Citizens' Comm. to Save Our Canyons v. Krueger*, 513 F.3d 1169, 1176 (10th Cir. 2008). In so doing, "we review the BIA's decision as the final agency determination," *Diallo v. Gonzales*, 447 F.3d 1274, 1279 (10th Cir. 2006), but we may consult the USCIS's decision for the grounds in the BIA's decision. *See Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006) (noting this court may consult an immigration judge's decision for a "more complete explanation" when reviewing a brief order issued by the BIA affirming the immigration judge).

"Our review is highly deferential." *Citizens' Comm.*, 513 F.3d at 1176 (internal quotation marks omitted). Ordinarily, we review an agency's decision to determine if it was "arbitrary, capricious, otherwise not in accordance with law, or not supported by substantial evidence." *Pennaco Energy, Inc. v. U.S. Dep't of Interior*, 377 F.3d 1147, 1156 (10th Cir. 2004) (internal quotation marks omitted). Yet Plaintiffs have not argued the BIA's decision falls into any of these categories. Instead, they argue: (1) the district court erred in concluding they lacked standing to

challenge the denial of Taylor's I-130 petition; and (2) the denial of an opportunity to cross-examine Taylor violated due process. We review both issues de novo. *See Luevano v. Holder*, 660 F.3d 1207, 1212 (10th Cir. 2011) (due process); *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005) (standing).[1]

## II.    Standing

Plaintiffs first contend the district court erred in finding they lacked standing to contest the denial of Taylor's I-130 petition. We disagree.

"[A] plaintiff must satisfy three criteria" to establish Article III standing: (1) "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest that is both (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) "there must be a causal connection between that injury and the challenged action of the defendant—the injury must be fairly traceable to the defendant, and not the result of the independent action of some third party"; and (3) "it must be likely, not merely speculative, that a favorable

---

[1] In their brief, Plaintiffs failed to provide the standard of review, *see* Fed. R. App. P. 28(a)(8)(B), and failed to include a copy of the BIA's decision, *see* 10th Cir. R. 28.2(A)(4). Additionally, it was Plaintiffs' duty, as appellants, to "file an appendix sufficient for considering and deciding the issues on appeal." 10th Cir. R. 30.1(B)(1). Plaintiffs included the district court's decision in their Appendix but failed to include the administrative record, despite citing a portion of it in their brief. In addition to the evidence before the USCIS and BIA, the administrative record included the decisions of the USCIS and BIA—documents which the government provided in its brief and Supplemental Appendix. As we have cautioned, "an appellant who provides an inadequate record does so at his peril." *Burnett v. Sw. Bell Tel., L.P.*, 555 F.3d 906, 908 (10th Cir. 2009) (internal quotation marks omitted). In the interest of justice, however, we have reviewed the filings in the district court to ensure Plaintiffs' arguments were adequately preserved for appellate review.

judgment will redress the plaintiff's injury." *Nova Health Sys.*, 416 F.3d at 1154 (internal quotation marks omitted).

The district court found Simonyan could not establish an injury in fact because she was neither the petitioner nor the beneficiary with respect to that petition. On appeal, Plaintiffs offer no argument for how Simonyan suffered any "invasion of a legally protected interest," *id.*, as a result of the USCIS's finding of marriage fraud in its denial of Taylor's I-130 petition. We agree with the district court that she lacked an injury in fact and, therefore, lacked standing.

The district court found Akopyan could not establish redressability because an alternative basis for the denial of Taylor's petition was divorce, so setting aside the finding of fraud would not affect the denial. This is correct. However, on appeal, Plaintiffs insist (1) Akopyan's injury was not the denial itself but the finding of fraud therein because it "would subject [him] to a lifetime bar," Aplt. Opening Br. at 10; and (2) setting aside the finding of fraud would redress the injury. Viewed through this lens, Akopyan's injury-in-fact claim fails because, contrary to his assertion, the prior finding of fraud would *not* result in a lifetime bar. When determining whether an I-130 petition should be denied based on a prior fraudulent marriage, the USCIS ordinarily does "not give conclusive effect to determinations made in a prior proceeding" but, instead, renders an "independent conclusion based on the evidence before [it]." *In re Tawfik*, 20 I. & N. Dec. 166, 168 (BIA 1990). In other words, it is the *evidence* of marriage fraud, not a prior *finding* of fraud, that would result in a lifetime bar. Any injury sustained by Akopyan, therefore, stems from the ample

7

evidence supporting the USCIS's finding of fraud, not the finding itself.

Accordingly, we agree with the district court that Akopyan lacked standing.

## III. Due Process

Plaintiffs next contend "Akopyan's due process rights were violated in denying him an opportunity to cross-examine Ms. Taylor." Aplt. Opening Br. at 12.[2] Here, too, Plaintiffs' argument is without merit.

In *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), the Supreme Court set out three factors relevant to a procedural due process claim: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." "To prevail on a due process claim, an alien must establish not only error, but prejudice." *Alzainati v. Holder*, 568 F.3d 844, 851 (10th Cir. 2009).

Here, Plaintiffs argue *only* prejudice and offer no explanation, under the *Mathews* test or otherwise, as to how the BIA erred. It is not this court's responsibility to "manufacture" an argument for an appellant. *United States v. Powell*, 767 F.3d 1026, 1037 (10th Cir 2014). By failing to raise the issue in their brief, Plaintiffs have abandoned any claim of error. *See Coleman v. B-G Maint.*

---

[2] Plaintiffs do not argue Simonyan's due process rights were violated by the lack of an opportunity to cross-examine Taylor.

*Mgmt. of Colo., Inc.*, 108 F.3d 1199, 1205 (10th Cir. 1997) ("Issues not raised in the opening brief are deemed abandoned or waived."). Without a showing of error, Plaintiffs' due process argument necessarily fails.

## CONCLUSION

For the reasons stated above, the district court is hereby affirmed.

Entered for the Court

Terrence L. O'Brien
Circuit Judge